**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

DAVID KRZESNI,

*Plaintiff - Appellant*,

v.

WELLPINIT SCHOOL DISTRICT, a legally separate body corporate or political; JOHN ADKINS,

*Defendants - Appellees*.

No. 25-3308

D.C. No. 2:24-cv-00040-MKD

OPINION

Appeal from the United States District Court
for the Eastern District of Washington
Mary K. Dimke, District Judge, Presiding

Argued and Submitted May 21, 2026
Seattle, Washington

Filed July 27, 2026

Before: Michael Daly Hawkins, Richard R. Clifton, and
Ryan D. Nelson, Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Whistleblower Retaliation

The panel affirmed the district court's summary judgment in favor of defendants Wellpinit School District ("WSD") and John Adkins in a whistleblower retaliation action brought by David Krzesni under the National Defense Authorization Act for Fiscal Year 2013 ("NDAA"), 41 U.S.C. § 4712, and Washington state law.

Krzesni alleged that he was unlawfully terminated from his job in retaliation for making protected disclosures regarding WSD's purported misuse of federal grant money. He alleged that defendants retaliated by refusing to renew his contract after he disclosed information revealing that WSD had used grant money to fund a trip to Hawaii without the requisite authorization from the federal government. He also brought a wrongful discharge claim under Washington law.

The panel held that to establish a prima facie whistleblower claim under the NDAA, a plaintiff must show that (1) an employee covered by the statute (2) communicated to a qualified person or body (3) a protected disclosure and (4) suffered an adverse employment action as a reprisal for making that disclosure. Once a prima facie claim is established, the employer may rebut it with clear and convincing evidence that it would have taken the same personnel action against

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the employee even if the protected disclosure had not occurred.

The panel concluded that Krzesni's act of reporting the Hawaii trip in an annual performance report was not a protected disclosure, and neither was his rhetorical question to a supervisor about the funding of the trip. The panel concluded that even if Krzesni made a protected disclosure in a call with the federal grant contact, this disclosure could not have been the basis for the adverse employment action because WSD had already decided not to renew Krzesni's contract before then.

The panel affirmed the district court's grant of summary judgment on Krzesni's state law wrongful discharge claim because the nonrenewal of his contract was not a discharge.

---

**COUNSEL**

Matthew Z. Crotty (argued), Riverside NW Law Group PLLC, Spokane, Washington, for Plaintiff-Appellant.

Rachel K. Stanley (argued) and Michael E. McFarland Jr., Evans Craven & Lackie PS, Spokane, Washington, for Defendant-Appellees.

**OPINION**

CLIFTON, Circuit Judge:

Plaintiff-Appellant David Krzesni appeals from the district court's order granting summary judgment for Defendants-Appellees Wellpinit School District ("WSD") and Superintendent John Adkins (collectively, "Defendants"). Relying on the National Defense Authorization Act for Fiscal Year 2013 ("NDAA"), 41 U.S.C. § 4712, Krzesni alleged that he was unlawfully terminated from his job at WSD in retaliation for making protected disclosures regarding WSD's purported misuse of federal grant money. Krzesni argued that Defendants retaliated by refusing to renew his contract after he disclosed information revealing that WSD had used grant money to fund a trip to Hawaii without the requisite authorization from the federal government. He also brought a wrongful discharge claim under Washington law.

With regard to his federal whistleblower claim, Defendants countered that Krzesni failed to make a protected disclosure under Section 4712 because, among other things, none of his purported disclosures objectively conveyed any suggestion of misconduct. As for his state law claim, Defendants argued that it failed as a matter of law because Krzesni was not discharged; rather, he was allowed to fully complete his contract, which Defendants simply chose not to renew.

The district court agreed with Defendants and granted them summary judgment on Krzesni's federal and state law claims. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.  Background

WSD is located within the Spokane Reservation and the majority of its students are members of the Spokane Tribe. In September 2022, the federal government awarded WSD a "Native Youth Community Project Grant," which, as described by the district court, "helps prepare American Indian students for college and careers." WSD hired Krzesni under a personnel contract effective January 10, 2023, to serve as Project Director in connection with the grant. WSD's primary federal contact for grant-related matters was Donna Bussell from the Department of Education's Office of Indian Education.

Prior to hiring Krzesni, WSD had planned for a group of students and staff to participate in a peer mediation program in Hawaii, scheduled for March 6 through March 14, 2023. WSD believed the trip to Hawaii would further the grant's objectives. In January 2023, upon starting his employment, Krzesni signed a requisition form to fund the trip using grant money. In February 2023, he submitted revisions to the grant budget for Bussell's approval, prompting her to write: "Just quickly reviewing the budget and I see travel to Hawaii. This was not in the original grant application therefore it will not be approved." Krzesni responded: "Can we discuss the Hawaii trip more? We see it as an important activity toward meeting the . . . goals of the grant . . . ." Bussell said that she would discuss the matter with her supervisors, adding that their "guidelines on travel [are] pretty strict." On March 2, 2023, Krzesni emailed WSD's business manager, Rainy Anderson, writing: "I think we'll likely be able to get approval, but it'll likely be after the trip's already done. So we definitely need to be careful about when we next draw down funds and what's included."

From March 6 through March 14, 2023, a group of WSD students and staff, including Krzesni himself, attended the Hawaii program.  Approval from Bussell had not been received before the trip was taken.

On March 13, 2023, while on the trip and about two months into his tenure, Krzesni emailed Anderson, indicating that he was contemplating leaving his job as soon as he could train a successor: "I'll just be open in saying that I'm hoping to prepare one of the new staff to step into the director role as soon as they're ready."  When asked by Anderson to confirm if his email meant that he was "preparing to leave," he responded: "That's what I was getting at."

Upon returning from the Hawaii trip, Krzesni contacted Anderson on April 11, 2023, regarding the filing of the Annual Performance Report ("APR") to demonstrate compliance with the grant's terms.  In his email, Krzesni inquired about used grant funds, noting that it was "tricky with the Hawaii trip unresolved."  Anderson informed Krzesni that she had already drawn down grant funds to pay for the trip.  Krzesni then prepared the APR, noting the trip expenses incurred ($55,011.05) and describing how the trip furthered various grant objectives.  Another WSD employee signed and certified the report, and on April 27, 2023, Krzesni submitted it to the government.

On May 1, 2023, Adkins contacted WSD's general counsel about Krzesni, and the next day, the two discussed not renewing his contract.  They spoke again on May 5, and on May 8, the general counsel sent Adkins a list of talking points for an upcoming meeting with Krzesni about the nonrenewal.  That same morning, on May 8, WSD administrators held an internal meeting and decided not to

renew Krzesni's contract, which was set to expire on September 30, 2023.

Separately that day, on May 8, Krzesni had a call with Bussell, who informed him that drawing down grant funds for the Hawaii trip without prior government authorization constituted "fraud."

In an email sent to Krzesni and another WSD staff on May 10, 2023, Bussell referred to "some discrepancies found on the APR" and noted that "the grant is on route payment until further notice."  Subsequently, in June 2023, WSD sent the government a check to reimburse the expenses incurred in connection with the Hawaii trip.

Krzesni filed this action against Defendants regarding the termination of his employment in district court.  This timely appeal followed the district court's judgment for Defendants.

## II.  Discussion

Krzesni challenges the district court's grant of summary judgment on both his federal whistleblower claim and his state law claim for wrongful discharge.  We review the grant of summary judgment de novo.  *Cohen v. Apple Inc.*, 46 F.4th 1012, 1025 (9th Cir. 2022).  Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there are no genuine issues of material fact.  *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017).  We also review de novo a "district court's interpretation of federal law."  *Tijerino v. Stetson Desert Project, LLC*, 934 F.3d 968, 971 (9th Cir. 2019).

## A. Federal Whistleblower Claim

To prevail on his federal whistleblower claim, Krzesni must show that he was a whistleblower protected under the NDAA.

Title 41 of the U.S. Code, where the NDAA whistleblower provisions are codified, governs federal contracting and procurement. Section 4712 of that title protects employees of government contractors and grant recipients from reprisals for making protected disclosures. *See DuPage Reg'l Off. of Educ. v. U.S. Dep't of Educ.*, 58 F.4th 326, 350 (7th Cir. 2023) ("To protect public funds from waste, fraud, and abuse, Congress established certain requirements, applicable to all federal contractors and grantees, to encourage the reporting of misuse of federal funds."). This case requires us to examine the substantive requirements to establish a whistleblower claim under the NDAA. Reviewing the statute's text and relevant caselaw, we conclude that to make a prima facie claim, an employee (1) who is covered by the statute (2) must communicate to a qualified person or body (3) a protected disclosure and (4) suffer an adverse employment action as a reprisal for making that disclosure.

*First*, a whistleblower claim under the NDAA may only be brought by an employee covered by the statute. According to the statute's plain text, covered employees include "[a]n employee of a contractor, subcontractor, grantee, subgrantee, or personal services contractor." § 4712(a)(1). The parties do not dispute that Krzesni, who worked for WSD as a contractor, was a covered employee.

*Second*, a covered employee must make a disclosure to a qualified person or body specified in the statute. Qualified persons or bodies to whom a protected disclosure may be

made, as relevant here, include "[a] Federal employee responsible for contract or grant oversight or management at the relevant agency." § 4712(a)(2)(D); *see also DuPage*, 58 F.4th at 350 (observing that "[t]o obtain relief under [§ 4712], an employee must . . . make a protected disclosure . . . to a person specified in the statute"). It is undisputed that Bussell, WSD's contact for the grant at the Department of Education, was a "Federal employee responsible for . . . grant oversight," § 4712(a)(2)(D), and therefore qualified as a person to whom a protected disclosure could be made. Another category of persons to whom a disclosure covered by the statute as protected could be made is a "management official or other employee of the contractor, subcontractor, grantee, subgrantee, or personal services contractor who has the responsibility to investigate, discover, or address misconduct." § 4712(a)(2)(G). One disclosure alleged by Krzesni to have been protected was made to Anderson, WSD's business manager.[1]

*Third*, the communication made by a covered employee must qualify as a *protected* disclosure. The NDAA defines a protected disclosure as a disclosure that contains "information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract)

---

[1] Other persons and bodies specified in the statute include "[a] Member of Congress or a representative of a committee of Congress"; "[a]n Inspector General"; "[t]he Government Accountability Office"; "[a]n authorized official of the Department of Justice or other law enforcement agency"; and "[a] court or grand jury." § 4712(a)(2).

or grant." § 4712(a)(1); *see also DuPage*, 58 F.4th at 350. By the NDAA's plain text, a protected disclosure must contain "information that the employee *reasonably* believes" is evidence of misconduct. § 4712(a)(1) (emphasis added).

An employee's reasonable belief in misconduct is a belief that is objectively reasonable. We have interpreted two separate federal whistleblower statutes that invoke the same reasonable-belief standard in identical or similar language. *Compare* 41 U.S.C. § 4712(a)(1) ("information that the employee reasonably believes is evidence of" misconduct), *with* 10 U.S.C. § 4701(a)(1) ("information that the employee reasonably believes is evidence of" misconduct), *and* 18 U.S.C. § 1514A(a)(1) ("conduct which the employee reasonably believes constitutes a violation"). In both instances, we interpreted that language to require a whistleblower's belief in misconduct be objectively reasonable. *See Kappouta v. Valiant Integrated Servs., LLC*, 60 F.4th 1213, 1217–18 (9th Cir. 2023) (interpreting identical language in 10 U.S.C. § 4701); *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 1000–01 (9th Cir. 2009) (interpreting similar language in 18 U.S.C. § 1514A). In *Kappouta*, in interpreting Section 4701's description of a protected disclosure—defined as "information that the employee reasonably believes is evidence of misconduct"— we held that "the belief must be objectively reasonable." 60 F.4th at 1218. Similarly in *Van Asdale*, regarding Section 1514A's prohibition of retaliation against a whistleblower for providing information the whistleblower "reasonably believes constitutes a violation," we once again held that "this belief must be objectively reasonable." 577 F.3d at 1000.

"As a general rule, we construe words in a new statute that are identical to words in a prior statute as having the same meaning." **2** *Bakersfield Energy Partners, LP v. Comm'r.*, 568 F.3d 767, 775 (9th Cir. 2009); *see also Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) ("[W]hen Congress uses the same language in two statutes having similar purposes . . . it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."). Because Section 4712, the statute at issue, employs the same language as the statutes we have interpreted in *Kappouta* and *Van Asdale*, we interpret it as incorporating the same reasonable-belief standard and the requirement that a whistleblower's belief in misconduct be objectively reasonable.

According to that standard, a whistleblower's belief in misconduct is objectively reasonable "if a disinterested observer with knowledge of the operative facts would reasonably conclude that the disclosure evidences" misconduct. *Kappouta*, 60 F.4th at 1217; *see also Coons v. U.S. Dep't of Treasury*, 383 F.3d 879, 890 (9th Cir. 2004) (holding that a "disclosure is protected by the [Whistleblower Protection] Act if a disinterested observer with knowledge of the essential facts known to and readily

---

[2] Our reliance on our decisions interpreting identical language in other statutes is especially appropriate in the whistleblower context of this case. As *Kappouta* and *Van Asdale* illustrate, we often consult other whistleblower statutes and related caselaw when interpreting analogous provisions. Other circuits have adopted a similar approach. *See, e.g.*, *Fuerst v. Hous. Auth. of Atlanta*, 38 F.4th 860, 872 (11th Cir. 2022) ("[W]e note that § 4712(a)(1) mirrors the text of another federal whistleblower law's anti-retaliation provision—5 U.S.C. § 2302(b)(8) of the Whistleblower Protection Act of 1989 . . . and caselaw interpreting the WPA provides analytical guidance.").

ascertainable by the employee could reasonably conclude that the actions. . . evidence" misconduct (citation modified)). By applying that understanding to the statute at issue, we join other circuits that have interpreted the NDAA in the same manner. *See, e.g.*, *Fuerst*, 38 F.4th at 872–75 (articulating Section 4712's reasonable-belief standard and "conclud[ing] that [the purported whistleblower's] belief was not objectively reasonable as a matter of law").

Because the standard is objective and turns on how a disinterested observer, informed of the operative facts, would understand the disclosure, the inquiry necessarily requires assessing the disclosure's content and whether it furnishes sufficient information indicative of any misconduct. *See Kappouta*, 60 F.4th at 1217 (asking whether such an observer "would reasonably conclude that *the disclosure evidences*" misconduct (emphasis added)). In the whistleblower context, cases focusing on the content of the purported disclosure are thus legion. *See, e.g.*, *Van Asdale*, 577 F.3d at 996–97 ("[T]o constitute protected activity under [the] Sarbanes-Oxley [Act], an employee's communications must definitively and specifically relate to one of the listed categories of fraud or securities violations under 18 U.S.C. § 1514A(a)(1)." (citation modified)); *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951–52 (5th Cir. 1994) (finding no protected disclosure under the False Claims Act where plaintiff "never characterized his concerns as involving illegal, unlawful, or false-claims investigations"); *Fields v. Dep't of Justice*, 452 F.3d 1297, 1304 (Fed. Cir. 2006) (observing that a chronology of events with no allegation of wrongdoing does not constitute a protected disclosure). After all, it is logical that statutes intended to protect whistleblowers require that a disclosure point in some way to alleged misconduct. The

NDAA, which requires disclosure of information reasonably believed to be evidence of misconduct, is no exception.

*Fourth*, the employee must also "suffer a reprisal for making the protected disclosure," *DuPage*, 58 F.4th at 350, which the NDAA describes in general terms by referring to "discharge[]," "demot[ion]," or "discriminat[ion]," § 4712(a)(1). Here, the parties do not dispute that Krzesni was subjected to an adverse employment action through the nonrenewal of his contract. But not every adverse employment action triggers the protections afforded by the NDAA. Section 4712 prohibits only adverse employment actions taken in *reprisal* for making a protected disclosure. *See* § 4712(a)(1) (prohibiting adverse employment actions taken "as a reprisal for disclosing" information). Accordingly, a whistleblower "ha[s] the initial burden of showing . . . that a disclosure was a contributing factor in a decision to take a personnel action." *DuPage*, 58 F.4th at 351 (quotation omitted); *see also* § 4712(c)(6) (incorporating 5 U.S.C. § 1221(e) (requiring a "demonstrat[ion] that a disclosure or protected activity . . . was *a contributing factor* in the personnel action which was taken or is to be taken against such employee" (emphasis added))).

These four requirements must be satisfied for a prima facie whistleblower claim under the NDAA to arise. Once a prima facie claim is established, the employer may rebut it with clear and convincing evidence that it would have taken the same personnel action against the employee even if the protected disclosure had not occurred. *See DuPage*, 58 F.4th at 351; *see also* 41 U.S.C. § 4712(c)(6); 5 U.S.C. § 1221(e)(2) (employer may "demonstrate[] by clear and

convincing evidence that it would have taken the same personnel action in the absence of such disclosure").[3]

Having laid out the basic requirements to articulate a whistleblower claim under the NDAA, we turn to Krzesni's claim, which is founded on three alleged disclosures by him.

### 1. Description in the Annual Performance Report

Krzesni argues that the act of reporting the Hawaii trip in the APR constituted a protected disclosure. The district court disagreed, and we do as well.

A descriptive account of a trip taken to Hawaii by a group of WSD students and staff, which included Krzesni himself, without any explicit or implicit suggestion of misconduct cannot objectively qualify as a protected disclosure. Absent any suggestion of wrongdoing, we cannot conclude that a protected disclosure occurred. The APR did not blow a whistle.

The APR described the trip as "a unique opportunity for cultural exchange and traditional Hawaiian restorative justice training." Moreover, it actively sought to justify the trip as furthering various grant objectives. It stated: "The resulting peer mediation program within [WSD] will benefit Objective 6 to reduce major disciplinary incidents and through improving student engagement will also address

---

[3] The NDAA also provides that an available administrative remedy must be exhausted. *See Jacobs Project Mgmt. Co. v. U.S. Dep't of Interior*, 64 F.4th 123, 125 (3d Cir. 2023); *see also* 41 U.S.C. § 4712(b)(1)–(4); *id.* § 4712(c)(2). Thus, a person seeking relief under the NDAA must first file a complaint with the Office of Inspector General of the relevant agency before a whistleblower complaint may be adjudicated in federal court. *Id.* § 4712(b)(1). The parties do not dispute that Krzesni exhausted the administrative remedies available to him and that his whistleblower claim is properly before the court.

Objective 7 to improve student attendance and Objective 3 to improve academic performance."

The lack of any statement indicating or implying misconduct, coupled with the report's affirmative statements characterizing the trip as a legitimate grant activity, leads us to conclude that "a disinterested observer with knowledge of the operative facts would [not] reasonably conclude that the disclosure evidences" any misconduct. *Kappouta*, 60 F.4th at 1217; *see also Fields*, 452 F.3d at 1304 (descriptive chronology of events not a protected disclosure). The description of the Hawaii program in the APR was not a protected disclosure.

### 2.  Rhetorical Question to Supervisor

Krzesni argues that, upon learning that grant funds were drawn down to fund the Hawaii trip without prior authorization, he rhetorically asked a supervisor, "So this is how we do things?," and that this question itself was a protected disclosure. We again disagree.

As a preliminary matter, Krzesni failed to advance this theory before the district court. "We are not required to consider an argument that was not properly presented to the district court or otherwise preserved for review." *Moreno Roofing Co. v. Nagle*, 99 F.3d 340, 343 (9th Cir. 1996). Even considering the theory on its merits, however, this statement also fails to qualify as a protected disclosure.

This rhetorical question did not convey any "information" relating to misconduct as required by the statute. 41 U.S.C. § 4712(a). It did not disclose anything, let alone any wrongdoing. Applying the standard discussed above, "a disinterested observer with knowledge of the operative facts [c]ould [not] reasonably conclude that" this

question evidenced any misconduct.  *Kappouta*, 60 F.4th at 1217.   This rhetorical question was not a protected disclosure.

### 3.  Krzesni's Call with Bussell

Krzesni argues that a call he had on May 8, 2023, with Bussell, the grant contact at the U.S. Department of Education, concerning the unauthorized use of grant funds, qualified as a separate protected disclosure.  It was that call in which Bussell described Defendants' actions in drawing from the grant to cover the Hawaii trip expenses as constituting "fraud."   The district court concluded that a protected disclosure might have been made in that call, but that any such disclosure could not have been the basis for the adverse employment action, because the WSD had already decided not to renew Krzesni's contract before then.

Krzesni's opening brief concedes as much.  It states that "[o]n May 1, 2023 . . . Mr. Adkins[] initiated the process of terminating Mr. Krzesni's . . . employment via a 'non-renewal' of his contract."[4]   For an adverse employment action to constitute reprisal for a protected disclosure, the action must occur *after* the disclosure.  As the district court concluded, there was no evidence in the record that WSD was aware that Krzesni had engaged in protected activity when it made the decision not to renew his contract.  An adverse action that preceded a purported disclosure could not have been taken in retaliation for that disclosure.  *See, e.g.*, *Mikhaylov v. DHS*, 62 F.4th 862, 868–69 (4th Cir. 2023) (rejecting any suggestion of a contributing factor when "the

---

[4] While the parties dispute the precise date Krzesni was informed of the nonrenewal decision, this issue is of no moment because Krzesni concedes that the decision not to renew his contract was initiated before the call in which he alleges he made a protected disclosure.

disciplinary process was initiated *before* [a whistleblower] made the protected disclosures"); *Horton v. Dep't of Navy*, 66 F.3d 279, 284 (Fed. Cir. 1995) (holding that a "disclosure can not have been a contributing factor to the action already initiated"). Accordingly, even assuming Krzesni made a protected disclosure, he failed to establish that he suffered a reprisal for making that disclosure.

### B. State Law Claim

Krzesni separately contends that the nonrenewal of his contract constituted wrongful discharge under Washington law.

Under Washington law, as explained by the state supreme court, "the tort of wrongful discharge in violation of public policy clearly applies only in a situation where an employee has been discharged." *Roberts v. Dudley*, 993 P.2d 901, 911 (Wash. 2000) (en banc) (footnote omitted). Washington courts distinguish between a "discharge" and a "nonrenewal." *See, e.g.*, *Petroni v. Bd. of Dirs. of Deer Park Sch. Dist. No. 414*, 127 Wash. App. 722, 729 (2005) (noting that a school board "was not required to treat its nonrenewal decision as a discharge"). Here, Krzesni was not discharged; rather, his contract with WSD was not renewed. Because a nonrenewal cannot establish the prima facie element of discharge, Krzesni's state law claim fails.

**AFFIRMED.**